UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE W. JONES,<br><br>                    Plaintiff,<br><br>v.<br><br>F. GARDINER,<br><br>                    Defendant. | Case No.:  14cv2477-MMA (MDD)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 14] |

Plaintiff Jessie W. Jones, a California state prisoner proceeding *pro se*, has filed a civil rights complaint against Defendant F. Gardiner[1] alleging a violation of his Fourth Amendment rights, based on Defendant's alleged use of excessive force, and negligence. *See* Doc. No. 1.  Defendant moves for summary judgment as to both claims. *See* Doc. No. 14.  Plaintiff filed an opposition, to which Defendant replied. *See* Doc. Nos. 23, 25.  The Court took the matter under submission on the briefs and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 26.  For the reasons set forth below, the Court **DENIES** Defendant's motion.

---

[1] Erroneously sued as "F. Gardish Gariner."

# FACTUAL BACKGROUND[2]

This action arises out of events occurring on or about November 29, 2013, while Plaintiff was housed at San Diego County Sheriff's Department George Bailey Detention Facility in San Diego, California. Defendant, a Corporal with the Sheriff's Department, supervised while the inmates in Plaintiff's housing module participated in a clothing exchange and cell check on the date in question. For security purposes, the inmates were required to exit their cells and line up single file, facing the wall of the module's adjacent dayroom. Plaintiff lined up with the front of his body facing the wall and his hands placed behind his back. However, Plaintiff then proceeded to look over his shoulder, turn his upper body at an angle away from the wall, and advise the supervising officers that he wanted to watch the cell search. At various times during Plaintiff's interaction with the officers, other inmates looked over their shoulders while remaining in line facing the wall.

Defendant directed Plaintiff to face the wall. Plaintiff turned his upper body towards the wall, but continued to look over his shoulder at the supervising officers. Plaintiff's hands remained behind his back. Defendant approached Plaintiff, handcuffed him, and escorted him down a corridor to a holding cell. According to Plaintiff, he advised Defendant that the handcuffs felt tight. According to Defendant, he habitually checks to make sure handcuffs are not too tight by placing one finger between the cuffs and the inmate's wrist. Plaintiff walked to the holding cell without resistance or incident, however, unpleasant words were exchanged between Plaintiff and Defendant during the journey.

Upon arrival, Defendant escorted Plaintiff into the holding cell, where he instructed Plaintiff to place his knees against the cell bench and cross his ankles so that

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Where a material fact is in dispute, it will be so noted. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

Defendant could remove the handcuffs. Plaintiff faced the wall of the cell and placed his right knee against the cell bench. According to Plaintiff, he advised Defendant that he could not place his left knee on the bench. According to Defendant, Plaintiff refused to cooperate and more unpleasant words were exchanged. Plaintiff claims that Defendant tightened the handcuffs further and then secured them in place. Plaintiff further claims that he informed Defendant again that the handcuffs were too tight. Defendant claims that he checked to make sure the cuffs were not too tight, and then double locked the handcuffs to prevent them from ratcheting tighter. Defendant exited the holding cell without releasing Plaintiff from the handcuffs.

Plaintiff remained handcuffed in the holding cell for approximately an hour and a half, until two officers arrived, one officer entered the cell, and removed the handcuffs while Plaintiff faced the wall with his right knee on the cell bench. The officer exited the holding cell, where Plaintiff remained for an additional period of time.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*,

3

14cv2477-MMA (MDD)

515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)).  In applying the standard set forth under Rule 56, district courts must "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## DISCUSSION

### 1. *Excessive Force Claim*

Plaintiff claims that Defendant used excessive force by handcuffing him too tightly, for a lengthy period of time, unnecessarily.  Because Plaintiff was a pretrial detainee at the time of the alleged events, his excessive force claim is governed by the Fourth Amendment's "objective reasonableness" standard.[3]  *See Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) ("[T]he Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention.") (quotation omitted).  The force used must have been objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  The Court must pay close "attention to the facts and circumstances in each particular case, including . . . whether the suspect poses an immediate threat to the safety of the officers or others . . . ," and must weigh the circumstances from the viewpoint of a reasonable officer at the scene.  *Id*. at 396-97.  "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir.

---

[3] As the Court noted in its January 22, 2015 Screening Order, it is unclear from the face of Plaintiff's complaint whether Plaintiff was a convicted prisoner or a pretrial detainee on November 29, 2013.  *See* Doc. No. 3 at 4 n.2.  The Superior Court of California, San Diego County Court Index indicates that criminal case number SCD250578 was filed against Plaintiff on September 11, 2013.  *See* http://courtindex.sdcourt.ca.gov (last visited on 3/29/2016).  The Appellate Courts Case Information System indicates that the trial court entered judgment against Plaintiff in criminal case number SCD250578 on March 14, 2014.  *See* http://appellatecases.courtinfo.ca.gov (last visited on 3/29/2016).  Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the state court dockets, which indicate that on November 29, 2013 Plaintiff was a pretrial detainee.

2002). In the Ninth Circuit, "unreasonable force claims are generally questions of facts for a jury." *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

As one district court in this circuit has explained, "[i]n those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing." *Shaw v. City of Redondo Beach*, 2005 U.S. Dist. LEXIS 46361, at *28 (C.D. Cal. Aug. 18, 2005). In this case, Plaintiff points to evidence in the record to support a finding that he suffered physical injury to his wrists, including a medical report that indicates Plaintiff presented the following day with pain and light abrasions on both wrists and swelling on his left wrist, with difficulty moving his fingers and wrist without pain.[4] *See* Pl. Ex. A-3. The report contains notes that Plaintiff's likely diagnosis was neuropraxia, and the examining physician ordered a follow-up x-ray. *Id*. A-5. A medical report dated February 25, 2014 includes a note that Plaintiff "was seen for emg testing where it was determined he had ulner neuro[pathy] from tight cuff." *See* Pl. Ex. A-6.

Plaintiff has provided declaration testimony that he notified Defendant, more than once, that the handcuffs were too tight. *See* Pl. Decl. ¶ 26 ("[I] also told the defendant that the cuffs felt tight on my wrist and he just kept walking me to the cell."); ¶ 29 ("I said to defendant that my cuffs are to [sic] tight again . . . but he just turned around and walked out the cell."). Video surveillance submitted by Defendant shows that Plaintiff was in handcuffs inside a holding cell for over an hour and a half. *See* Def. Ex. B.

Other material facts are disputed by the parties, supported by only the competing declarations of Plaintiff and Defendant, and inconclusive video surveillance recordings. For example, according to Plaintiff, Defendant never checked the handcuffs to see if he

---

[4] Defendant objects to Plaintiff's evidence on grounds that it lacks foundation, contains hearsay, and is irrelevant to prove that Defendant's use of force was excessive. *See* Doc. No. 25-1. The Court **OVERRULES** Defendant's objections. *See* Fed. R. Evid. 401, 402, 803(6), 901.

had placed them too tightly on Plaintiff's wrists.  *See* Pl. Decl. ¶ 21.  In contrast, Defendant states in his declaration that "[w]hen handcuffing an inmate, it is my habit to place one finger between the handcuffs and the inmate's wrists in order to make sure they are not too tight.  Thus, I am sure I checked the tightness of the handcuffs when I initially placed them on plaintiff."  *See* Def. Decl. ¶ 9.  Plaintiff asserts that when Defendant secured the safety lock on the handcuffs, he intentionally tightened the cuffs.  *See* Pl. Decl. ¶ 29.  Defendant states that "[b]efore leaving the cell, I again placed a finger between plaintiffs wrists and the handcuffs in order to confirm that the handcuffs were not too tight.  I also took out the key and made sure the handcuffs were double locked to prevent the handcuffs from ratcheting tighter."  *See* Def. Decl. ¶ 13.  The video surveillance is inconclusive on this issue, due to the quality of the video and the angle of the camera.  *See* Def. Exs. A, B.

     Defendant asserts that the use of force – handcuffing Plaintiff and leaving him handcuffed in the holding cell – was justified based on Plaintiff's behavior.  According to Defendant, "[o]n arrival at the holding cell, I instructed plaintiff to enter the holding cell, place his knees against the cell bench, and cross his ankles so that I could remove the handcuffs."  *See* Def. Decl. ¶ 11.  Defendant states that "Plaintiff refused to cooperate.  Plaintiff called me various derogatory names, challenged me to remove the handcuffs for a fight, and threatened to physically attack me when the handcuffs were removed."  *Id*. ¶ 12.  Plaintiff concedes that he and Defendant exchanged verbal remarks during the walk to the holding cell, but asserts that once inside the cell he cooperated.  *See* Pl. Decl. ¶¶ 25-26.  According to Plaintiff, he advised Defendant that he could not put his left knee on the bench and put his weight on it.  *See* Pl. Decl. ¶ 27.  The video surveillance is once again inconclusive, showing Plaintiff putting his right knee up on the bench, followed by Defendant securing the handcuffs and retreating from the cell.  *See* Def. Exs. A, B.

     "To be sure, the reasonableness inquiry in the context of excessive force balances 'intrusion[s] on the individual's Fourth Amendment interests' against the government's interests."  *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167 (9th Cir.

2014) (citing *Graham*, 490 U.S. at 396). In this case, Defendant's initial use of handcuffs to restrain Plaintiff may have been reasonable based on Plaintiff's behavior during the cell check, however, the fact that handcuffing an inmate is "standard practice, everywhere, has no bearing on whether an [inmate's] handcuffs are excessively tight." *Thompson v. Lake*, 607 Fed. Appx. 624, 625-626 (9th Cir. 2015) (internal citations omitted). The Ninth Circuit has cautioned district courts that "[t]he issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000). This is such a case.

Defendant argues that he is entitled to qualified immunity from suit because his use of handcuffs to escort Plaintiff to a holding cell, and his decision to leave him handcuffed in the cell, would not have been considered clearly unlawful to a reasonable officer at the time. A defendant is not entitled to qualified immunity if a constitutional violation has occurred, the law was clearly established at the time, and "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Here, it is not the use of handcuffs generally that lies at the crux of Plaintiff's claim, but rather the allegedly excessive tightness of the cuffs. At the time of the events in question, it was "well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). "The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960. The Ninth Circuit has held that excessive force claims based on handcuffing may proceed to trial where a plaintiff's request to loosen the handcuffs was rejected and the plaintiff suffered some injury. *See Wall*, 364 F.3d at 1112 (officer refused to loosen "extremely tight" handcuffs on plaintiff; plaintiff suffered injury to his medial nerve); *LaLonde*, 204 F.3d at 960 (officers refused to release tight handcuffs upon request; plaintiff suffered back pain and numb wrist and hand); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1995) (tight handcuffs not loosened

upon request; handcuffs caused pain and left bruises that lasted for several weeks). Thus, on November 29, 2013, a reasonable officer would have understood that the use of excessively tight handcuffs resulting in injury could violate a pretrial detainee's constitutional rights. The same factual dispute that precludes summary judgment on Plaintiff's excessive force claim precludes summary judgment on a qualified immunity defense.

In sum, viewing the evidence in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists as to whether Defendant used excessive force in handcuffing Plaintiff too tightly for too lengthy a period of time. Plaintiff claims that he informed Defendant twice that the handcuffs were too tight, yet Defendant left Plaintiff cuffed in a holding cell for approximately an hour and a half despite Plaintiff's protestation. The Court cannot find that "the only reasonable conclusion that the evidence permits is that the force used was reasonable." *LaLonde*, 204 F.3d at 960. Rather, "a reasonable jury could find that [Defendant] used an unreasonable amount of force in handcuffing [Plaintiff] and as a result violated [his] Fourth Amendment rights." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's Fourth Amendment claim.

### 2. *Negligence Claim*

Defendant argues that he is entitled to summary judgment on Plaintiff's negligence claim based on Plaintiff's failure to comply with the claim presentation requirements of the California Tort Claims Act ("CTCA"). Under the CTCA, a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Failure to demonstrate compliance with the CTCA will result in the dismissal of a party's state law tort claims. *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1240

(2004).

Plaintiff submitted a claim form, as required by the CTCA, but Defendant argues that Plaintiff's claim form failed to list his state law cause of action for negligence. *See* Def. Ex. C. However, "[A CTCA] claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" *Stockett v. Association of California Water Agencies Joint Powers Insurance Authority*, 34 Cal. 4th 441, 446 (2004) (quoting *Shoemaker v. Myers*, 2 Cal. App. 4th 1407, 1426 (1992); *Turner v. State of California*, 232 Cal. App. 3d 883, 888 (1991)). "[T]he purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim . . . ." *Stockett*, 34 Cal. 4th at 446 (internal quotations and citations omitted).

Although Plaintiff did not specifically list a negligence claim, Plaintiff's CTCA claim form adequately described the incident giving rise to his current claims. Plaintiff included the date, time, and location of the incident, and identified Defendant as the employee who caused his injury. *See* Def. Ex. C. Plaintiff stated that he was "placed in handcuffs, he put on real tight, bent left hand, there was a pop and slight pain. Then I was put in a cell hand's behinded [sic] my back and left for 2 hours." *Id*. Plaintiff described his injury as "pain in left hand, and in arm at times. A lot of numbness and at times I can't move my 2 small fingers. Like I have nerve damage." *Id*. Under the CTCA, this is sufficient. Plaintiff did not have to enumerate specific causes of action or "contain the detail and specificity required of a pleading." *Stockett*, 34 Cal. 4th at 446. The content of Plaintiff's CTCA claim is sufficient "so long as the complaint is not based on an 'entirely different set of facts.'" *Id.* (quoting *Stevenson v. San Francisco Housing Authority*, 24 Cal. App. 4th 269, 278 (1994)). Plaintiff's failure to specifically identify his negligence cause of action in his CTCA claim form does not warrant dismissal of the claim in this lawsuit.

Because the court concludes that there are genuine issues of material fact as to the objective reasonableness of Defendant's use of force, Plaintiff's negligence claim must

also proceed to trial. "In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (alterations omitted). "A special relationship [exists] between jailer and prisoner, imposing a duty of care [on the jailer]." *Giraldo v. California Dept. of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250 (2008). Prison officials therefore owe a duty of reasonable care to protect prisoners and detainees from foreseeable harm. *Id.* Here, there is a genuine dispute regarding Defendant's alleged breach of this duty to Plaintiff. Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's negligence claim.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion for summary judgment. Plaintiff's claims must proceed to trial. The Court will issue a separate order appointing Plaintiff trial counsel pursuant to 28 U.S.C. § 1915(e)(1) and General Order No. 596, "Plan for the Representation of Pro Se Litigants in Civil Cases," which provides that the Court may appoint trial counsel as a matter of course in a prisoner civil rights case where summary judgment has been denied. Subsequent to the appointment of trial counsel, the Court will issue a scheduling order setting forth all relevant pretrial deadlines and hearings.

**IT IS SO ORDERED**.

DATE: April 14, 2016

_____
HON. MICHAEL M. ANELLO
United States District Judge